TRINETTE G. KENT (State Bar No. 222020)
Lemberg Law, LLC
1100 West Town & Country Road, Suite 1250
Orange, California 92868
Telephone: (480) 247-9644
Facsimile: (480) 717-4781
E-mail: tkent@lemberglaw.com

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Adam Hamblin, Juliet Kelsten, Adelina Sessa, Nancy Pierce, and Kaitlyn Hammack, *on behalf of themselves and all others similarly situated,*

Plaintiffs,

vs.

Toyota Motor Sales, U.S.A., Inc. and Toyota Motor North America, Inc.,

Defendants.

Case No.: 2:26-cv-03458-HDV-KS

**SECOND AMENDED CLASS ACTION COMPLAINT FOR:**

1. **Magnuson-Moss Warranty Act**
2. **Unjust Enrichment**
3. **Breach of Express Warranty (South Carolina)**
4. **Breah of Implied Warranty (South Carolina)**
5. **Breach of Express Warranty (Ohio)**
6. **Tortious Breach of Implied Warranty (Ohio)**
7. **Breach of Express Warranty (Wisconsin)**
8. **Breach of Implied Warranty (Wisconsin)**
9. **Breach of Express Warranty (Pennsylvania)**
10. **Breach of Implied Warranty (Pennsylvania)**
11. **Breach of Express Warranty (Florida)**
12. **Breach of Implied Warranty (Florida)**

**DEMAND FOR JURY TRIAL**

Plaintiffs Adam Hamblin, Juliet Kelsten, Adelina Sessa, Nancy Pierce, and Kaitlyn Hammack ("Plaintiffs"), hereby bring this Class Action Complaint against Defendants Toyota Motor Sales, U.S.A., Inc., and Toyota Motor North America, Inc. (collectively "Defendants" or "Toyota").

## INTRODUCTION

1. Plaintiffs bring this lawsuit on behalf of themselves and putative classes of purchasers and lessees of 2025 Toyota Sienna vehicles equipped with defectively manufactured second-row seat rails (the "Class Vehicles") that were manufactured, marketed, distributed, sold, and warranted by Defendants.

2. The 2025 Sienna is advertised and marketed as a family-friendly minivan that has three rows of seating that can accommodate 7 or 8 people. The Sienna's seating capacity and size is the primary reason why Plaintiffs and class members purchased the Class Vehicles.

3. However, the Class Vehicles' second-row seats were defectively manufactured, placing vehicle owners and their family members at an unacceptably high risk of injury. Specifically, the second-row seat rails which attach the seats to the vehicle body were improperly welded (the "Defect" or "Second Row Defect"). As a result of the incorrect and substandard welding, Toyota admits that if the Class Vehicles are in a collision they are at an increased risk of experiencing a "loss of structural integrity of the seat system" which "increas[es] the risk of injury."

4. Last year Toyota issued a Part 573 Safety Recall Report acknowledging the Defect – that the seat rails were defectively manufactured – and that the Defect makes the vehicles unsafe. However, when this lawsuit was filed Toyota had not repaired a single Class Vehicle. At the same time, in its recall notice "Toyota recommends no one sit in or use a child restraint in the second-row seat while the vehicle is moving until the remedy is performed on the vehicle." Given that Class Vehicles' 7-8 person seating capacity is the reason why owners purchased the vehicles in the first place, the Defect renders the Class Vehicles inoperable, unusable, and unfit for their intended use. Indeed, because of the Defect, Plaintiffs and Class Vehicle owners have been unable to safely use their brand new Class Vehicles to transport their families.

5. Class Vehicle owners have submitted numerous complaints to the National Highway Traffic Safety Administration ("NHTSA") voicing their frustration and anger with Defendants over the unrepaired Second Row Defect. Specifically, owners complain that they were sold unsafe defective vehicles which put their family members at risk, and that Toyota has failed to timely eliminate the Defect. *E.g.*:

- NHTSA Complaint No. 11724845, March 17, 2026: "Toyota has instructed owners not to use the second-row seats until a repair becomes available. As a result, the vehicle cannot be safely used for its intended purpose. I am a parent of three children, including an infant who requires a rear-facing car seat. Without the ability to use the second-row seats, the vehicle is unusable for my family. The vehicle has been in the possession of the dealership (AutoNation Toyota Weston, Florida) since December 22, 2025. As of today, the vehicle has been out of service for over 80 days, and Toyota has confirmed that there is still no repair

remedy available and no timeline for resolution. I have been provided with a temporary Toyota RAV4, which is not comparable to a three-row family vehicle and does not accommodate my family's needs. I continue to make monthly payments of approximately 900 through Toyota Financial Services for a vehicle that I am unable to use. This situation represents a significant safety concern and a substantial loss of use of the vehicle, with no resolution provided by the manufacturer."

- NHTSA Complaint No. 11721924, March 4, 2026 (Incident Date October 7, 2025): "There has been a safety recall on the second row seats open since 10/7/2025 making them unusable. There is still no remedy 5 months later. This is unacceptable especially on a brand new vehicle."

- NHTSA Complaint No. 11721091, February 27, 2026 (Incident Date October 7, 2025): "Toyota acknowledges the vehicles are not safe to drive due to incorrect settings in their welding equipment during manufacture, rendering the middle row seats unsafe to sit in. The recall happened Oct 7th, even though it was evident there were issues dating back to June or earlier. My vehicle was purchased in July. Should not have been sold frankly. The vehicle was turned over to the local Toyota dealership for service shortly after October 7th. The vehicle has been sitting un-repaired for almost five month, undriven, deteriorating. Toyota corporate has refused to help with remedying the issue and have provided untimely updates to their interim recall. NHTSA notice states that 'if the manufacturer has failed or is unable to remedy this safety recall for your vehicle in a timely manner' to file an online complaint. I am filing an online complaint as in no world is several months a 'timely' resolution."

- NHTSA Complaint No. 11718749, February 18, 2026 (Incident Date October 14, 2025): "We purchased a brand-new Toyota Sienna Hybrid in April 2025 and were informed in October 2025 that there was a safety recall on the vehicle involving the rear seats and that we cannot drive the van with our kids in the back seat. This rendered the van unusable for us. We have been told on several occasions that that there currently is no remedy for this safety issue."

- NHTSA Complaint No. 11718192, February 16, 2026 (Incident Date October 7, 2025): "Toyota issued a recall due to suspected second row seat welds failing in a crash in October 7, 2025 and has not offered a remedy. The suggestion of not having anyone sit in the second row for over four months now is absurd and warrants investigation. The customers who purchase vans do so due to needing the space to occupy 5+ passengers and are not able to have all passengers sit in

the third row putting passengers at risk daily without a solution. This is complete negligence by the company."

- NHTSA Complaint No. 11717848, February 13, 2026 (Incident Date October 7, 2025): "Improper welds on second-row seat rails... We purchased a brand new 2025 Sienna, as we have three small children in car seats, and the minivan is convenient. I used the 2nd row for 2 of the car seats. I have contacted all of the Toyota dealerships within an hour of our house, and they either don't offer service rentals for recalls, don't have anything suitable available, don't have rentals at all, or don't return messages left inquiring about rentals. I spoke with Toyota customer care last week (Feb. 2, 2026) and they had no update on a fix or timeline, and this has been going on since October 2025. This is the 2nd Toyota we have had in 3 years, and both have had recalls. I am disappointed in Toyota, not as reliable as they claim, I guess."

- NHTSA Complaint No. 11716772, February 9, 2026 (Incident Date October 7, 2025): "We purchased a brand new 2025 Toyota Sienna at the end of May 2025 and received a recall letter in December 2025 stating the 2nd row seats may have been improperly welded in could result in serious bodily injury in a crash. We bought this vehicle for our family of 5 and have had 2 car seats in the 2nd row. Toyota advices NOT to use the 2nd row until a remedy is implemented, so the car is now unusable for us. The car has been at our local dealership since we received notice in December and we have had NO word on a solution. Toyota has known about this issue since October 2025. We're approaching 2 months without use of the vehicle we purchased and Toyota is approaching 4 months since the fault was discovered with no remedy to show for it."

6. Moreover, since this lawsuit was filed, owners continue to complain that their vehicles remain unrepaired. *E.g.*:

- NHTSA Complaint No. 11741234 , June 1, 2026: "The contact owns a 2025 Toyota Sienna Hybrid. The contact received notification of NHTSA Campaign Number: (SEATS ); however, the part to do the recall repair was unavailable. The local dealer was contacted and it was confirmed that the part was not available. The contact stated that the manufacturer exceeded a reasonable amount of time for the recall repair. The manufacturer was made aware of the issue. The contact had not experienced the failure."

- NHTSA Complaint No. 11740830, May 29, 2026: "This report is being filed to due a prolonged recall on the second row seats of this vehicle. We have not been able to use the second row seats for over 7 months, and there have been no communication or updates from the manufacturer regarding a remedy . . . ."

- NHTSA Complaint No. 11739943, May 25, 2026: "This has been a recall for over 5 months and my van is still not repaired and my two middle seats are unsafe for my children to be in. Toyota and the dealership say there is no fix, but the car is unsafe in the second row per their recommendation."

- NHTSA Complaint No. 11737286, May 12, 2026: "There is a safety recall on my vehicle with no remedy. It has been 7 months since the recall notification. The dealer provided us with a rental, however it is a different model (Sienna vs 4 Runner)."

7. Toyota's sale of the Class Vehicles with the Second Row Defect and its failure to repair the Defect constitutes a breach of the implied warranty of merchantability and Toyota's express warranty, and Toyota has been unjustly enriched by selling these defective vehicles.

8. Plaintiffs and class members were damaged because they purchased vehicles with undisclosed defective second-row seat rails: they would not have purchased the vehicles or would have paid less money for them had they known of the Defect. Moreover, because the Second Row Defect has been widely publicized following the sale of the Class Vehicles, the Class Vehicles are and will continue to be worth less money than equivalent vehicles without the Defect even if Toyota has attempted repairs on the vehicles.

9. Toyota has and will continue to benefit from its unlawful conduct – by selling more vehicles, at a higher price, and avoiding warranty obligations – while

consumers are harmed at the point of sale as their vehicles continue to suffer from the unremedied Second Row Defect.

10. To remedy Toyota's unlawful conduct, Plaintiffs, on behalf of the proposed class members, seek damages, restitution, and injunctive relief from Toyota.

## PARTIES

11. Plaintiff Adam Hamblin ("Plaintiff Hamblin" or "Mr. Hamblin) is an adult individual residing in Myrtle Beach, South Carolina.

12. Plaintiff Juliet Kelsten ("Plaintiff Kelsten" or "Ms. Kelsten") is an adult individual residing in Gahanna, Ohio.

13. Plaintiff Adelina Sessa ("Plaintiff Sessa" or "Ms. Sessa") is an individual residing in Madison, Wisconsin.

14. Plaintiff Nancy Pierce ("Plaintiff Pierce" or "Ms. Pierce") is an individual residing in Cambridge Springs, Pennsylvania.

15. Plaintiff Kaitlyn Hammack ("Plaintiff Hammack" or "Ms. Hammack") is an adult individual residing in Davenport, Florida.

16. Defendant Toyota Motor Sales, U.S.A., Inc. is a California corporation with a principal place of business at 6565 Headquarters Drive, Plano, Texas 75024.

17. Defendant Toyota Motor North America, Inc. is a California corporation with a principal place of business at 6565 Headquarters Drive, Plano, Texas 75024.

18. Defendants Toyota Motor Sales, U.S.A., Inc. and Toyota Motor North America, Inc. (collectively "Toyota Sales" or "Toyota") are responsible for the distribution, marketing, sale, lease and warranting of the Class Vehicles throughout the United States.

19. Defendants have a nationwide dealership network and operate offices and facilities throughout the United States. Defendants distribute Toyota, Lexus, and Scion vehicles in the United States and sell these vehicles through their network of dealers. Money received from the purchase of a Toyota vehicle from a dealer flows from the dealer to Defendants.

20. Toyota reviews and analyzes warranty data submitted by Toyota's dealerships and authorized technicians in order to identify defect trends in vehicles. Toyota dictates that when a repair is made under warranty (or warranty coverage is requested), service centers must provide Defendants with detailed documentation of the problem and the fix that describes the complaint, cause, and correction, and also save the broken part in the event Defendants decide to audit the dealership. Toyota uses this information to determine whether particular repairs are covered by an applicable Toyota warranty or are indicative of a pervasive defect.

21. Toyota also developed the marketing materials to which Plaintiffs and the Class were exposed, owner's manuals, informational brochures, warranty booklets,

and information included in maintenance recommendations and/or schedules for the Class Vehicles.

## JURISDICTION AND VENUE

22. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiffs and Class Members, and Defendants are citizens of different states.

23. Personal jurisdiction and venue is proper in this District, because at all relevant times, Toyota Motor Sales, U.S.A., Inc. and Toyota Motor North America, Inc. were California corporations; Toyota engages and performs business activities in this District; a substantial portion of the conduct complained of herein occurred in this District; and Toyota is authorized to conduct (and conducts) business in this District.

## FACTUAL ALLEGATIONS

### The 2025 Toyota Sienna Was Sold with Unsafe and Defective Second Row Seats

24. The 2025 model year Toyota Sienna is a minivan that can seat up to 7 or 8 people. Toyota prominently advertises the Sienna's seating capacity and that it is a family-friendly vehicle. This was one of the primary motivating factors for why Plaintiffs and class members purchased the Class Vehicles.

25. For instance, on Toyota's website for the 2025 model year Sienna, it advertised that depending on the trim-level the Sienna either came equipped with "8-

passenger seating" via a "second-row bench" or "7-passenger seating" via "second-row captain's chairs with super-long slide feature."[1] It claimed that the "Sienna's inviting and versatile design makes it easy to bring family fun wherever you go."[2] Elsewhere, Toyota similarly advertised that "[t]he 2025 Sienna brings the space, convenience, and efficiency that make it a winning choice for any lifestyle" and that "[f]or 2025 the Sienna can seat up to 8. . . ."[3]

26. However, the Class Vehicles were defectively manufactured and sold with defective second-row seat rails that prevent the vehicles from safely transporting 7 or 8 passengers.

27. Specifically, as Toyota admitted in the Safety Recall documents, the Class Vehicles "contain second-row seats that are mounted to seat rails that attach the seats to the vehicle body. These seat rails are assembled with welds in multiple locations." According to Toyota, the Class Vehicles were sold with seat rails that "contain welds that are not fully penetrated" which "can lead to a loss of structural integrity of the seat system in certain high-speed collisions if that seat is occupied, increasing the risk of injury."

---

[1] https://web.archive.org/web/20241228032527/https://www.toyota.com/sienna/features/mpg_other_price/5402/5410/5418 (last visited March 4, 2026).

[2] https://web.archive.org/web/20250101162312/https://www.toyota.com/sienna/ (last visited March 3, 2026).

[3] https://pressroom.toyota.com/vehicle/2025-toyota-sienna/ (last visited March 3, 2026).

28. Toyota contends that the defective second row seat rails were improperly welded "[d]ue to a changed setting of a welding machine during assembly," i.e., they were defectively manufactured.

29. Toyota admits that between July 2025 and August 2025 it performed internal testing on the Class Vehicles' seats which confirmed that "the seat system failed to meet a Toyota internal standard" because the seat rails had incomplete weld penetration.

30. Thereafter, in September 2025 "Toyota completed testing and confirmed that the seat system could lose structural integrity under certain high-speed collisions if the seat rails were produced with weld machine settings that could lead to incomplete weld penetration."

31. In recall documents, Toyota confirmed that for Class Vehicles, i.e., those 2025 model year Sienna vehicles produced between January 14, 2025 and July 24, 2025, "100% of the involved vehicles contain certain second-row seat rails that were produced with weld machine settings that could lead to incomplete weld penetration."

32. The Class Vehicles were sold with defective second row seat rails regardless of whether the vehicles were equipped with second row captain's seats or a second row bench.

**Toyota's Recall is Ineffective, Does Not Provide All of the Relief Sought in this Lawsuit, and Does Not Make Class Vehicle Owners Whole**

33. Toyota issued a Safety Recall acknowledging the Second Row Defect makes the Class Vehicles unsafe, but the recall remedy is ineffective.

34. To begin, when this lawsuit was filed Toyota had not repaired any Class Vehicle and it still has not attempted repairs on many of the Class Vehicles. In late 2025 it sent out recall notices to Class Vehicle owners and Toyota dealerships acknowledging the Defect and stating that at some later date it would replace the second-row seat rails, but for several months thereafter it failed to replace any of the Plaintiffs' or other Class Vehicles' defective second-row seat rails.

35. Moreover, in the recall documents, "Toyota recommends no one sit in or use a child restraint in the second-row seat while the vehicle is moving until the remedy is performed on the vehicle." Therefore, for at least many months Plaintiffs and class members were unable to use the Class Vehicles for their intended purpose: transporting 7-8 people at a time. To the extent Plaintiffs or putative class members have opted to continue driving their vehicles at all, they are unable to use the second row of seating and thus cannot take advantage of the Class Vehicles' seating capacity which they bargained for and paid for.

36. Further, Toyota fails to provide Class Vehicle owners with suitable alternate transportation means while the Class Vehicles' second-row seats remain unsafe to occupy and the vehicles unsafe to drive. Indeed, Toyota and its dealerships

have either refused to provide owners with any loaner vehicles, or where a loaner is provided the vehicle does not have the same features and/or seating capacity as the 2025 model year Sienna, and the vehicles often have worse fuel economy compared to the Class Vehicles.

37. In addition, owners who do receive loaner vehicles are required to leave their brand new Class Vehicles in dealership parking lots, often for months at a time, where the vehicles are at risk of being damaged by the elements or being stolen. Indeed, car dealership parking lots are consistently targeted by criminals and subject to vehicle thefts.

38. The recall is also inadequate because it does not provide Class Vehicle owners with any compensation to account for the fact that they overpaid for defective vehicles which were worth less money at the time of sale due to the concealed safety Second Row Defect.

39. The recall does not provide Plaintiffs or class members with the complete relief they seek in this lawsuit.

**<u>The NHTSA Complaints and Online Discussions of the Defect</u>**

40. Class Vehicle owners have submitted numerous complaints to the National Highway Traffic Safety Administration concerning the Second Row Defect. As reflected in the below complaints, owners are furious that their vehicles are unsafe, remain unrepaired with no timeline provided for a future repair, and they are unable to

use the second-row seating they paid for. Indeed, many owners note they have stopped driving the vehicles altogether due to the Defect:

- NHTSA Complaint No. 11724572, March 16, 2026: "The contact owns a 2025 Toyota Sienna Hybrid. The contact received notification of NHTSA Campaign Number: 25V668000 (SEATS); however, the part to do the recall repair was unavailable. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. The manufacturer was made aware of the issue. The local dealer was not contacted. The contact had not experienced a failure."

- NHTSA Complaint No. 11724588, March 16, 2026: "The contact owns a 2025 Toyota Sienna Hybrid. The contact received notification of NHTSA Campaign Number: 25V668000 (Seats); however, the part to do the recall repair was unavailable. The contact stated that the manufacturer exceeded a reasonable amount of time for the recall repair. The dealer was contacted and confirmed that there was no time frame for when parts would be available. The contact spoke with a second dealer, Clint Bowyer Toyota (2815 US-50, Emporia, KS 66801); who confirmed that there was no ETA for parts availability. The manufacturer was made aware of the issue and confirmed that the remedy was not yet available. The contact had not experienced a failure."

- NHTSA Complaint No. 11724663, March 16, 2026: "We were notified by Toyota that it was unsafe to transport our children in the second row seats in November 2025 and the vehicle was under a recall. This puts our children at risk. A letter from NHTSA stated Toyota would have a remedy by 12/6. The manufacturer (Toyota) confirmed this recall. Given that Toyota has not indicated a solution date for this and the problem was discovered in October 2025 I believe the manufacturer has failed or is unable to remedy this safety recall for our vehicle in a timely manner and would like to officially log a complaint with NHTSA."

- NHTSA Complaint No. 11724723, March 16, 2026: "Toyota has failed to provide a remedy for the recall regarding the 2nd row seat welds. My current vehicle is sitting on a lot, unable to drive for the past 5 months. The safety of my children is at risk, and despite contact with the Toyota corporation, a fix has yet to be completed and no timeline provided."

- NHTSA Complaint No. 11724787, March 16, 2026: "I can no longer transport my grandchildren in my car. I do not have another vehicle I can use to drive them in."

- NHTSA Complaint No. 11724452, March 15, 2026: "My 2025 Toyota Sienna is affected by the recall related to improper welding of the second-row seat rails. On November 19, 2025, I brought the vehicle to a Toyota dealership because they had advised me that it was not safe to continue driving due to the safety concern involving passenger seats. The dealership advised against driving it and kept the vehicle, and Toyota arranged a rental vehicle for me. As of now, several months later, there is still no repair remedy available and my vehicle remains at the dealership. I transport children and elderly family members, so passenger seat safety is very important to me. I am concerned about the long delay in providing a remedy for a safety-related issue and the extended loss of use of my vehicle."

- NHTSA Complaint No. 11723857, March 12, 2026: "We were notified by Toyota that it was unsafe to transport our children in the second row seats in November 2025 and the vehicle was under a recall. This puts our children at risk. A letter from NHTSA stated Toyota would have a remedy by 12/6. The manufacturer (Toyota) confirmed this recall. Given that Toyota has not indicated a solution date for this and the problem was discovered in October 2025 I believe the manufacturer has failed or is unable to remedy this safety recall for our vehicle in a timely manner and would like to officially log a complaint with NHTSA"

- NHTSA Complaint No. 11723960, March 12, 2026: "The contact owns a 2025 Toyota Sienna Hybrid. The contact received notification of NHTSA Campaign Number: 25V668000 (Seats); however, the part to do the recall repair was not yet available. The vehicle was taken to several dealers but was not diagnosed or repaired. The dealer confirmed that parts were not yet available. The manufacturer was made aware of the issue. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. The contact had not experienced a failure."

- NHTSA Complaint No. 11723546, March 11, 2026: "The manufacturer had exceeded a reasonable amount of time for the recall remedy. They have declined my requests for them to set expectations for a number of months or years after which a remedy will be available."

- NHTSA Complaint No. 11723622, March 11, 2026: "The contact owns a 2025 Toyota Sienna Hybrid. The contact received notification of NHTSA Campaign Number: 25V668000 (Seats). The contact was unable to use all the seats because there were three car seats inside the vehicle. The local dealer was contacted, and Toyota on Nicholasville Parts (2100 Lexington Rd, Nicholasville, KY 40356), but the vehicle was not diagnosed or repaired. The manufacturer was notified of the failure. The contact had not experienced a failure."

- NHTSA Complaint No. 11723627, March 11, 2026: "We bought a new Toyota Sienna 2025 in April for our growing family of 5. On 10/7/2025 a recall was released stating to not use our 2nd row seats due to the seats being improperly welded to the frame. We use three car seats. We have since been placed in three different rental vehicles and still are waiting on a remedy for this ongoing problem. Our new van has been sitting on a lot for four continuous months now, with no fix in site. I feel that Toyota has not supplied a timely remedy to this safety recall and this is the reason for my formal complaint on this platform today."

- NHTSA Complaint No. 11722875, March 9, 2026: "I own a 2025 Toyota Sienna affected by Safety Recall 25V668 involving second-row seat rails with suspected improper welds. Toyota sent a notice advising that no one should sit in or use a child restraint in the second-row seats until the repair remedy becomes available. However, there is currently no remedy available and no repair timeline. I have contacted both the dealership and Toyota multiple times over the past four months but have not received clear answers or a resolution. The dealership verbally told me I can continue transporting my children, which conflicts with the written safety notice from Toyota. I am a mother of six children and this vehicle is essential for transporting my family. Because the recall involves seating safety and there is no repair available, the vehicle cannot be safely used as intended. I am submitting this complaint due to lack of repair availability and lack of clear communication from the manufacturer."

- NHTSA Complaint No. 11723039, March 9, 2026: "The contact owns a 2025 Toyota Sienna Hybrid. The contact received notification of NHTSA Campaign Number: 25V668000 (SEATS); however, the part to do the recall repair was not yet available. The local dealer was contacted. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. The manufacturer was made aware of the issue. The contact had not experienced a failure."

- NHTSA Complaint No. 11722718, March 7, 2026: "We were notified by Toyota that it was unsafe to transport our child or anyone else in the second row seats in November 2025 and the vehicle was under a recall. This puts my child at risk. A letter from NHTSA stated Toyota would have a remedy by 12/6. The manufacturer (Toyota) confirmed this recall. Given that Toyota has not indicated a solution date for this and the problem was discovered in October 2025, I believe the manufacturer has failed or is unable to remedy this safety recall for our vehicle in a timely manner and would like to officially log a complaint with NHTSA."

- NHTSA Complaint No. 11722736, March 7, 2026: "Received Notice From Toyota that a weld defect on the middle row seats made them unsafe to use. I took my vehicle into Toyota to be repaired over three months ago and there is still no repair or plans to repair."
- NHTSA Complaint No. 11722743, March 7, 2027: "My 2025 Toyota Sienna XLE (VIN: [XXX]) is subject to Safety Recall 25V668 related to defective second-row seat rail welds. The recall states that the seat structure may fail during certain high-speed collisions, increasing the risk of injury to passengers. As a result of this safety recall, my vehicle was suspended from passenger rental service on October 6, 2025 and has remained unusable for its intended purpose since that date. Toyota has confirmed that the recall status is "Remedy Not Available," meaning no repair solution currently exists for this safety defect. The vehicle therefore cannot be safely used for passenger transport and continues to cause significant financial loss while loan payments remain due. I am filing this complaint because the vehicle has been unusable for an extended period of time due to a safety defect with no available remedy. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)"

- NHTSA Complaint No. 11722445, March 6, 2026: "The contact owns a 2025 Toyota Sienna Hybrid. The contact received notification of NHTSA Campaign Number: 25V668000 (Seats); however, the part to do the recall repair was not yet available. The local dealer was contacted. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. The manufacturer was not made aware of the issue. The contact had not experienced a failure."

- NHTSA Complaint No. 11722452, March 6, 2026: "My husband and I ordered this vehicle last year and picked it up [XXX]. We paid cash and are retired so

that was alot. The reason for the purchase was to take our 4 grandchildren on mini trips. For the recall reason we have not been able to do this for obvious reasons, their safety. We received notification in December I believe, I immediately called the dealer. I was advised there is no remedy yet, I have called numerous time to hear the same thing, and not their fault. I ask what to do, they said dont let anyone sit in the rear seats?? scary. I called Toyota customer service on March 2nd, case#[XXX] and was told someone would call within 2 days, I have heard nothing. Our first Toyota and the purchase reason is not available, a scary waste of money for retired people. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)"

- NHTSA Complaint No. 11722499, March 6, 2026: "The contact owns a 2025 Toyota Sienna Hybrid. The contact received notification of NHTSA Campaign Number: 25V668000 (Seats); however, the part to do the recall repair was not yet available. The local dealer was contacted. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. The manufacturer was made aware of the issue. The contact had not experienced a failure."

- NHTSA Complaint No. 11722584, March 6, 2026: "This complaint concerns a safety recall affecting a 2025 Toyota Sienna Hybrid involving the second-row seat rails due to suspected weld defects. Toyota has acknowledged the recall and confirmed that a remedy is currently not available. The vehicle was purchased new in May 2025 and currently has approximately 6,600 miles. Due to this safety recall affecting the second-row seating system, the vehicle cannot be safely and fully used as intended. The recall states that the second-row seat rails may have been improperly welded, which may cause the seat to lose structural integrity in certain high-speed collisions, increasing the risk of injury. The manufacturer has confirmed that the recall remains unresolved and that a repair remedy is not yet available. No timeline for repair has been provided. The continued absence of a remedy for this safety-related recall for such an extended period makes it impossible to safely and fully use the vehicle as intended. This complaint is being submitted to document the ongoing safety issue and the prolonged absence of an available remedy.
- 1 Associated Product

- NHTSA Complaint No. 11722592, March 6, 2026: "We were notified by Toyota that it was unsafe to transport our children in the second row seats in

December 2025 and the vehicle was under a recall. This puts our children at risk. A letter from NHTSA stated Toyota would have a remedy by 12/6. The manufacturer (Toyota) confirmed this recall. Given that Toyota has not indicated a solution date for this and the problem was discovered in October 2025 I believe the manufacturer has failed or is unable to remedy this safety recall for our vehicle in a timely manner and would like to officially log a complaint with NHTSA."

- NHTSA Complaint No. 11722168, March 5, 2026: "The contact owns a 2025 Toyota Sienna Hybrid. The contact received notification of NHTSA Campaign Number: 25V668000 (Seats); however, the part to do the recall repair was unavailable. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. The dealer was contacted. The manufacturer was not made aware of the issue. The contact had not experienced a failure."

- NHTSA Complaint No. 11722178, March 5, 2026: "The contact owns a 2025 Toyota Sienna Hybrid. The contact received notification of NHTSA Campaign Number: 25V668000 (Seats); however, the part to do the recall repair was not yet available. The dealer was contacted several times. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. The manufacturer was not made aware of the issue. The contact had not experienced a failure."

- NHTSA Complaint No. 11722211, March 5, 2026: "In October 2025, Toyota issued a recall for MY2025 Sienna Hybrid vehicles due to second-row seat rails that were improperly welded by supplier Toyota Boshoku Kentucky due to a miscalibrated welding machine. The defect means the seat structure may not maintain integrity in a high-speed collision, making the rear seats unsafe for use — including for child safety seats. The recall was confirmed by the dealership. Repair parts are still unavailable as of today, and Toyota has provided no timeline for when the fix will be completed. I have been in a dealership-provided loaner vehicle for over four months that does not meet my family's needs. Toyota's dispute resolution center has not responded to my buyback/replacement request. My children cannot safely use the rear seats of my brand new vehicle. The affected component (seat rail assembly) is available for inspection at the dealership."

- NHTSA Complaint No. 11721924, March 4, 2026 (Incident Date October 7, 2025): "There has been a safety recall on the second row seats open since

10/7/2025 making them unusable. There is still no remedy 5 months later. This is unacceptable especially on a brand new vehicle."

- NHTSA Complaint No. 11721659, March 3, 2026 (Incident Date March 3, 2026): "The contact owns a 2025 Toyota Sienna Hybrid. The contact received notification of NHTSA Campaign Number: 25V668000 (Seats); however, the part to do the recall repair was not yet available. The dealer was contacted, and the contact was informed that parts were available. The manufacturer was not contacted. The contact had not experienced a failure."

- NHTSA Complaint No. 11721862, March 3, 2026 (Incident Date December 30, 2025): "We received a recall on this 2025 Toyota Sienna hybrid (NHTSA Recall No 25V-668 / Toyota Recall No 25TA12) for the seat rails that may come unwelded in a high-speed accident in December, 2025. When we asked our dealership about it they acknowledged it, but said that there was no fix. Because we regularly take 2-4 passengers besides ourselves in our van, we asked for a replacement vehicle. They offered a "rental" which is just a loaner vehicle. The Highlander that they offered does not fill our needs. We've been without our van for nine weeks now, and there is no end date in sight. How hard is it to take the rails out, weld them properly, and put them back in? If the safety of my family was not in jeopardy with this recall, I likely would have ignored it, especially after it's taking so long to get this repair taken care of."

- NHTSA Complaint No. 11721274, March 1, 2026 (Incident Date October 7, 2025): "We were notified by Toyota that it was unsafe to transport our children in the second row seats in November 2025 and the vehicle was subject to a recall. This has been extremely inconvenient, and outs our two small children at risk because the third row seats are in the rear crumple zone. A letter from NHTSA stated Toyota would have a remedy by 12/6. The manufacturer (Toyota) confirmed this recall via a letter mailed out. I contacted the Toyota dealership I purchased the vehicle from, and they knew less about the second row seat recall than I did, even going as far as to tell me the second row seats were safe and fine to use - they laughed at the inquiry about a rental vehicle before offering a Corolla when one became available. I contacted Toyota corporate several times, with no update was available aside from the original press release script recommending that I not use the second row seats, and indicated that a fix was not yet available. Toyota continues to sell 2026 model year Sienna vans with fixed second row seat rails, so the updated part exists, Toyota simply has decided that they value producing new vehicles over fixing the vehicles they've already been paid for. Given that Toyota has not indicated

a solution date for this and the problem was discovered in October 2025, as well as their decision to fix the part in question but offer no production capacity to recalled vehicles and instead continue making new Siennas, I no longer believe the manufacturer is able to remedy this safety recall for our vehicle in a timely manner and would like to officially log a complaint with NHTSA."

- NHTSA Complaint No. 11721233, March 1, 2026 (Incident Date November 28, 2025): "My vehicle is involved in the Toyota 25TA12 recall. There is no date for the repair, my car is at the dealer, I am in a loaner vehicle. I am interested in a buyback or replacement and am starting that process via a demand for arbitration."

- NHTSA Complaint No. 11721113, February 28, 2026 (Incident Date October 5, 2025): "We were notified by Toyota that it was unsafe to transport our children in the second row seats in October 2025 and the vehicle was under a recall. This puts our children at risk. A letter from NHTSA stated Toyota would have a remedy by 12/6. The manufacturer (Toyota) confirmed this recall. Given that Toyota has not indicated a solution date for this and the problem was discovered in October 2025 I believe the manufacturer has failed or is unable to remedy this safety recall for our vehicle in a timely manner and would like to officially log a complaint with NHTSA."

- NHTSA Complaint No. 11720841, February 27, 2026 (Incident Date October 8, 2025): "My children were at risk riding in an improperly welded second row. The dealer issued a recall and my vehicle has been out of service since"

- NHTSA Complaint No. 11720983, February 27, 2026 (Incident Date October 7, 2025): "The contact owns a 2025 Toyota Sienna Hybrid. The contact had received notification of NHTSA Campaign Number: 25V668000 (Seats). The contact had been calling a local dealer and the manufacturer, and was advised that the part was not available for the recall repair. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. The contact had not experienced a failure."

- NHTSA Complaint No. 11721091, February 27, 2026 (Incident Date October 7, 2025): "Toyota acknowledges the vehicles are not safe to drive due to incorrect settings in their welding equipment during manufacture, rendering the middle row seats unsafe to sit in. The recall happened Oct 7th, even though it was evident there were issues dating back to June or earlier. My vehicle was purchased in July. Should not have been sold frankly. The vehicle was turned

over to the local Toyota dealership for service shortly after October 7th. The vehicle has been sitting un-repaired for almost five month, undriven, deteriorating. Toyota corporate has refused to help with remedying the issue and have provided untimely updates to their interim recall. NHTSA notice states that "if the manufacturer has failed or is unable to remedy this safety recall for your vehicle in a timely manner" to file an online complaint. I am filing an online complaint as in no world is several months a "timely" resolution."

- NHTSA Complaint No. 11720598, February 26, 2026 (Incident Date October 7, 2025): "Seats are improperly welded (the middle row where our children / car seats ride) and it is unsafe to have passengers in those seats. The recall was put out by Toyota in October 2025 and there is no remedy.

- NHTSA Complaint No. 11720684, February 26, 2026 (Incident Date October 7, 2025): "We were notified by Toyota that it was unsafe to transport our children in the second row seats in November 2025 and the vehicle was under a recall. This puts our children at risk. A letter from NHTSA stated Toyota would have a remedy by 12/6/2025. The manufacturer (Toyota) confirmed this recall. Given that Toyota has not indicated a solution date for this and the problem was discovered in October 2025 I believe the manufacturer has failed or is unable to remedy this safety recall for our vehicle in a timely manner and would like to officially log a complaint with NHTSA."

- NHTSA Complaint No. 11720764, February 26, 2026 (Incident Date October 1, 2025): "My 2025 Toyota Sienna (VIN: [XXX] ) is subject to Safety Recall 25TA12 involving defective welds and second-row seat anchor systems. This defect directly affects child restraint anchoring and crash safety. I have four children and require three car seats. Due to this unresolved defect, my children cannot safely ride in this vehicle. Toyota has had approximately five months and still has no available repair remedy. The vehicle has been sitting unused in my yard while I continue making payments. Toyota provided a rental, confirming the severity of the safety concern, but no permanent repair exists. This prolonged delay in correcting a child safety defect places my family at unreasonable risk and raises serious safety and compliance concerns. I request regulatory review. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)"

- NHTSA Complaint No. 11720081, February 24, 2026 (Incident Date October 24, 2025): "We were notified by Toyota that it was unsafe to transport our

children in the second row seats in October 2025 and the vehicle was under a recall. This puts our children at risk. A letter from NHTSA stated Toyota would have a remedy by 12/6. The manufacturer (Toyota) confirmed this recall. Given that Toyota has not indicated a solution date for this and the problem was discovered in October 2025 I believe the manufacturer has failed or is unable to remedy this safety recall for our vehicle in a timely manner and would like to officially log a complaint with NHTSA."

- NHTSA Complaint No. 11720121, February 24, 2026 (Incident Date October 7, 2025): "Hi, we purchased the Toyota Sienna in February 2025 for our family of 7. We received the notification in the app in October 2025 that there was a recall on the 2nd row seat welding. We freaked out since our kids use that row just about everyday. When we contacted Toyota, they hadn't even heard of the recall and we were the first to notify them. They said they would follow up but they didn't. We have asked them every time we brought the van in for service since the hatch was also faulty which they had to fix, we were at the dealership often. They said they would reach out when a remedy was determined. It is now February 2026, a year after our purchase date and we are very hesitant and weary of what to do. We again called and spoke to a Toyota rep and they told us to put the kids in the 3rd row. I am not sure how we can fit 5 bodies in the 3rd row when there are only 3 seats with seatbelts. Again, we told them we have 5 kids. We purchased this car for the family to take trips and to be together. We have two big trips coming up this spring and summer where the 2nd row will be utilized. We are unsure of how to proceed since the van was not cheap but it was a necessary purchase for our family of 7. We really don't want to learn this the hard way and do not want to put our children at risk but what other choice do we have when this is the only way we can all travel together. Toyota should have a remedy by now. Are they waiting for a death to occur? How many children will need to be injured for this recall to be taken seriously? Please advise. I love my children and their safety is our upmost concern. We keep the car use to local driving and avoid highway use. Again, this is not what we purchased this vehicle for."

- NHTSA Complaint No. 11720269, February 24, 2026 (Incident Date October 24, 2025): "The contact owns a 2025 Toyota Sienna Hybrid. The contact received notification of NHTSA Campaign Number: 25V668000 (SEATS); however, the part to do the recall repair was not yet available. The local dealer was contacted. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. The manufacturer was not made aware of the issue. The contact had not experienced a failure."

- NHTSA Complaint No. 11720281, February 24, 2026 (Incident Date February 24, 2026): “The contact owns a 2025 Toyota Sienna Hybrid. The contact received notification of NHTSA Campaign Number: 25V668000 (Seats): however, the part for the recall repair was not available. The dealer was contacted, and the contact was informed that parts were not yet available. The manufacturer was not contacted. The contact had not experienced a failure.”

- NHTSA Complaint No. 11720302, February 24, 2026 (Incident Date October 7, 2025): “We were notified by Toyota that it was unsafe to transport our children in the second row seats in November 2025 and the vehicle was under a recall. This puts our children at risk. A letter from NHTSA stated Toyota would have a remedy by 12/6. The manufacturer (Toyota) confirmed this recall. Given that Toyota has not indicated a solution date for this and the problem was discovered in October 2025 I believe the manufacturer has failed or is unable to remedy this safety recall for our vehicle in a timely manner and would like to officially log a complaint with NHTSA."

- NHTSA Complaint No. 11719799, February 23, 2026 (Incident Date October 7, 2025): “I am told not to drive the vehicle while putting anyone in the second row (it is a mini van and I have young kids). Still no fix available for almost 6 months - Paying interest on a vehicle I cannot safely drive is wrong.”

- NHTSA Complaint No. 11719901, February 23, 2026 (Incident Date October 7, 2025): “vehicle has had an active recall since october of 2025. I was told by the dealership the recall made it unsafe to have people occupy the passenger seat as was confirmed by Toyota. I then asked to get a loaner car until the recall was remedied. That was denied. I am now asking for the lease to be terminated early due to me making payments on a vehicle that doesnt allow my children to be safe.”

- NHTSA Complaint No. 11719767, February 22, 2026 (Incident Date July 7, 2025): “Toyota issued a recall due to suspected second row seat welds failing in a crash on October 7, 2025, with Safety Recall Notice mailed beginning of December 2025, and has not offered a remedy. The suggestion of not having anyone sit in the second row for over four months now is absurd and warrants investigation. We purchased the van with needing the space to occupy 5+ passengers and are not able to have all passengers sit in the third row. Using third row is inconvenient for car seats and parents in their mid [XXX] . This is complete negligence by Toyota. Keeping the van on a dealer lot for months on

end will be bad for batteries, brakes and rotors. With no timeline for a remedy and by doing a welding repair it may cause future issues with the van from rust prevention, electronics and etc. We noticed unusual vibrations from 2nd row seats both with car seats in place and with just grocery bags within the 1st week of driving the van back in July 2025. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)"

- NHTSA Complaint No. 11719767, February 22, 2026 (Incident Date July 7, 2025): "Toyota issued a recall due to suspected second row seat welds failing in a crash on October 7, 2025, with Safety Recall Notice mailed beginning of December 2025, and has not offered a remedy. The suggestion of not having anyone sit in the second row for over four months now is absurd and warrants investigation. We purchased the van with needing the space to occupy 5+ passengers and are not able to have all passengers sit in the third row. Using third row is inconvenient for car seats and parents in their mid [XXX] . This is complete negligence by Toyota. Keeping the van on a dealer lot for months on end will be bad for batteries, brakes and rotors. With no timeline for a remedy and by doing a welding repair it may cause future issues with the van from rust prevention, electronics and etc. We noticed unusual vibrations from 2nd row seats both with car seats in place and with just grocery bags within the 1st week of driving the van back in July 2025. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)"

- NHTSA Complaint No. 11719649, February 21, 2026 (Incident Date November 24, 2025): "We were notified by Toyota that it was unsafe to transport our children in the second row seats in November 2025 and the vehicle was under a recall. This puts our children at risk. A letter from NHTSA stated Toyota would have a remedy by 12/6. The manufacturer (Toyota) confirmed this recall. Given that Toyota has not indicated a solution date for this and the problem was discovered in October 2025. The manufacturer has failed or is unable to remedy this safety recall for our vehicle in a timely manner and would like to officially log a complaint with NHTSA. Thank you."

- NHTSA Complaint No. 11719654, February 21, 2026 (Incident Date October 7, 2025): "The second row seat rails have been improperly welded, and we have been told not to use the second row. The recall was issued in October 2025. There is no fix scheduled. We have a baby and a young child. This car is unsafe for them."

- NHTSA Complaint No. 11719656, February 21, 2026 (Incident Date October 1, 2025): “We were notified by Toyota that it was unsafe to transport our children in the second row seats in November 2025 and the vehicle was under a recall. This puts our children at risk. A letter from NHTSA stated Toyota would have a remedy by 12/6. The manufacturer (Toyota) confirmed this recall. Given that Toyota has not indicated a solution date for this and the problem was discovered in October 2025 I believe the manufacturer has failed or is unable to remedy this safety recall for our vehicle in a timely manner and would like to officially log a complaint with NHTSA”

- NHTSA Complaint No. 11719305, February 20, 2026 (Incident Date October 6, 2025): “Toyota said fix would be by Dec 2025. No fix yet, they have not given any other communication and in the recall letter said not to use the second row. Paying for a car where I can’t use the second row seats and they need to fix this now and stop delaying this costly repair to them. They continue to make new cars even though all 55K of us in the recall are waiting for them to help us.”

- NHTSA Complaint No. 11719349, February 20, 2026 (Incident Date October 7, 2025): “We purchased a 2025 Toyota Sienna Woodland Edition in July 2025. On October 7, 2025 we were notified that vehicle is subject to a safety recall [NHSTA Recall No. 25V-668, Toyota Recall No. 25TA12 (Interim Notice 25TB12)] due to improperly welded seat rails. The recall states: "The subject vehicles contain second-row seats that are mounted on seat rails that may have been improperly welded. If these seats are occupied during certain high-speed collisions, the seat may lose structural integrity, increasing the risk of injury. All known owners of the subject vehicles will be notified to return their vehicles to a Toyota dealer. For all involved vehicles, the dealer will replace the second-row seat rails with rails that have proper welding, free of charge. For all involved vehicles, Toyota will notify customers by early December 2025." Following the recall notice, we returned our Toyota Sienna to the dealer due to the safety risk of putting our children (or any passenger) in the second row seats and we are currently driving a rental car. Toyota has not yet indicated a solution for this recall and has not provided a remedy as originally stated by December 2026. Given that it is now February 20, 2026 and our vehicle has been out of service for it's intended purpose for over 120 days without a remedy, we would like to officially log a complaint with the NHSTA.”

- NHTSA Complaint No. 11719520, February 20, 2026 (Incident Date October 9, 2025): “We were notified by Toyota that it was unsafe to transport our children

in the second row seats in October 2025 and the vehicle was under a recall. This puts our children at risk. A letter from NHTSA stated Toyota would have a remedy by 12/6. The manufacturer (Toyota) confirmed this recall. Given that Toyota has not indicated a solution date for this till this day 2/20/2026 and the problem was discovered in October 2025 I believe the manufacturer has failed or is unable to remedy this safety recall for our vehicle in a timely manner and would like to officially log a complaint with NHTSA."

- NHTSA Complaint No. 11719019, February 19, 2026 (Incident Date October 7, 2025): "There is a safety recall on my car (second row seats not welded correctly) that has not been fixed in a timely fashion, resulting in me not being able to use my car for over four months. There is no information from the manufacturer regarding when a fix will be available. This recall puts my children who sit in the second row seats at danger and I am thus unable to use my car."

- NHTSA Complaint No. 11719244, February 19, 2026 (Incident Date November 21, 2025): "We were notified by Toyota that it was unsafe to transport our children in the second row seats in November 2025 and the vehicle was under a recall. This puts our children at risk. A letter from NHTSA stated Toyota would have a remedy by 12/6. The manufacturer (Toyota) confirmed this recall. The seat always shook but we assumed it was the carseats shaking, but, upon removing them to take the car to the dealer, we were still hearing the shaking even without the carseats. Given that Toyota has not indicated a solution date for this and the problem was discovered in October 2025 I believe the manufacturer has failed or is unable to remedy this safety recall for our vehicle in a timely manner and would like to officially log a complaint with NHTSA."

- NHTSA Complaint No. 11719263, February 19, 2026 (Incident Date October 7, 2025): "We were notified by Toyota that it was unsafe to transport our children in the second row seats in October 2025 and the vehicle was under a recall. This puts our children at risk. A letter from NHTSA stated Toyota would have a remedy by 12/6. The manufacturer (Toyota) confirmed this recall. Given that Toyota has not indicated a solution date for this and the problem was discovered in October 2025 I believe the manufacturer has failed or is unable to remedy this safety recall for our vehicle in a timely manner and would like to officially log a complaint with NHTSA".

- NHTSA Complaint No. 11718749, February 18, 2026 (Incident Date October 14, 2025): "We purchased a brand-new Toyota Sienna Hybrid in April 2025

and were informed in October 2025 that there was a safety recall on the vehicle involving the rear seats and that we cannot drive the van with our kids in the back seat. This rendered the van unusable for us. We have been told on several occasions that that there currently is no remedy for this safety issue."

- NHTSA Complaint No. 11718525, February 17, 2026 (Incident Date February 17, 2026): "The contact owns a 2025 Toyota Sienna Hybrid. The contact received notification of NHTSA Campaign Number: 25V668000 (Seats); however, the part to do the recall repair was not yet available. The vehicle was taken to the dealer; however, the part for the recall repair was not available. The manufacturer was contacted, and a case was filed. The contact had not experienced a failure."

- NHTSA Complaint No. 11718568, February 17, 2026 (Incident Date February 17, 2026): "The contact owns a 2025 Toyota Sienna Hybrid. The contact received notification of NHTSA Campaign Number: 25V668000 (Seats); however, the part to do the recall repair was not yet available. The local dealer was contacted. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. The manufacturer was made aware of the issue. The contact had not experienced a failure."

- NHTSA Complaint No. 11718629, February 17, 2026 (Incident Date February 17, 2026): "The contact owns a 2025 Toyota Sienna Hybrid. The contact received notification of NHTSA Campaign Number: 25V668000 (Seats); however, the part to do the recall repair was not yet available. The dealer was contacted. The dealer confirmed that parts were not yet available for the recall repair. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. The manufacturer was made aware of the issue. The contact had not experienced a failure."

- NHTSA Complaint No. 11718192, February 16, 2026 (Incident Date October 7, 2025): "Toyota issued a recall due to suspected second row seat welds failing in a crash in October 7, 2025 and has not offered a remedy. The suggestion of not having anyone sit in the second row for over four months now is absurd and warrants investigation. The customers who purchase vans do so due to needing the space to occupy 5+ passengers and are not able to have all passengers sit in the third row putting passengers at risk daily without a solution. This is complete negligence by the company."

- NHTSA Complaint No. 11718230, February 16, 2026 (Incident Date February 16, 2026): "Unresolved recall for second row seats in a MINIVAN that has to transport small children in car seats. Using the seats will put them at risk. Using third row is inconvenient. Keeping van on dealer lot for months on end will be bad for battery, etc. No timeline for repair. The reason we purchased the vehicle is unusable and a major safety concern."

- NHTSA Complaint No. 11717848, February 13, 2026 (Incident Date October 7, 2025): "Improper welds on second-row seat rails... We purchased a brand new 2025 Sienna, as we have three small children in car seats, and the minivan is convenient. I used the 2nd row for 2 of the car seats. I have contacted all of the Toyota dealerships within an hour of our house, and they either don't offer service rentals for recalls, don't have anything suitable available, don't have rentals at all, or don't return messages left inquiring about rentals. I spoke with Toyota customer care last week (Feb. 2, 2026) and they had no update on a fix or timeline, and this has been going on since October 2025. This is the 2nd Toyota we have had in 3 years, and both have had recalls. I am disappointed in Toyota, not as reliable as they claim, I guess."

- NHTSA Complaint No. 11717882, February 13, 2026 (Incident Date May 16, 2025): "The contact owns a 2025 Toyota Sienna Hybrid. The contact received notification of NHTSA Campaign Number: 25V668000 (SEATS); however, the part to do the recall repair was unavailable. The local dealer was contacted, and it was confirmed that the part was not available. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. The manufacturer was made aware of the issue. The contact stated that the driver's and passenger's side second-row seats were vibrating abnormally while driving. The vehicle was not repaired. The failure mileage was 200."

- NHTSA Complaint No. 11717925, February 13, 2026 (Incident Date February 13, 2026): "The contact owns a 2025 Toyota Sienna Hybrid. The contact received notification of NHTSA Campaign Number: 25V668000 (Seats); however, the part to do the recall repair was not yet available. The local dealer was contacted and confirmed that the part was not yet available. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. The manufacturer was made aware of the issue. The contact had not experienced a failure."

- NHTSA Complaint No. 11717932, February 13, 2026 (Incident Date December 17, 2025): "I am the owner of a 2025 Toyota Sienna currently grounded at an

authorized dealership due to safety recall NHTSA #25V668 (improperly welded 2nd-row seat rails) and I suspect NHTSA #25V099 (3rd-row seat back bolts) also may apply (but has not been tested). As of today, the vehicle has been out of service for nearly 60 consecutive days. The dealer confirmed the defects but stated that no remedy is available and no timeline for repair has been provided by the manufacturer. This defect poses an extreme safety risk. I have an infant in a car seat; Toyota's interim guidance (which prohibits use of the 2nd row) makes it impossible to safely transport my child. Using the 3rd row is not a viable or safe alternative for an infant in a rear-facing seat. Toyota has failed to provide a remedy within a "reasonable time" per 49 U.S.C. § 30120. Under California's Song-Beverly Act, the 30-day "out of service" threshold has been exceeded. Because the manufacturer cannot fulfill its warranty and safety obligations, I am formally seeking a vehicle replacement (Substitution of Collateral).

- NHTSA Complaint No. 11717551, February 12, 2026 (Incident Date February 12, 2026): "The contact owns a 2025 Toyota Sienna Hybrid. The contact received notification of NHTSA Campaign Number: 25V668000 (Seats); however, the part to do the recall repair was not yet available. The local dealer was contacted. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. The manufacturer was made aware of the issue. The contact had not experienced a failure."

- NHTSA Complaint No. 11717297, February 11, 2026 (Incident Date February 11, 2026): "The contact owns a 2025 Toyota Sienna Hybrid. The contact received notification of NHTSA Campaign Number: 25V668000 (Seats); however, the part to do the recall repair was not yet available. The local dealer was contacted. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. The manufacturer was made aware of the issue. The contact had not experienced a failure."

- NHTSA Complaint No. 11717002, February 10, 2026 (Incident Date December 15, 2025): "Toyota became aware of the problem with the middle row of seats in October 2025. We were not alerted until December 2025. It is now February 2026 and there is still no resolution in sight. I did not buy a minivan to be stuck being unable to use half of my seats and Toyota is taking too long to resolve this issue."

- NHTSA Complaint No. 11716624, February 9, 2026 (Incident Date October 7, 2025): "Recall is not being addressed in a timely manner."

- NHTSA Complaint No. 11716772, February 9, 2026 (Incident Date October 7, 2025): “We purchased a brand new 2025 Toyota Sienna at the end of May 2025 and received a recall letter in December 2025 stating the 2nd row seats may have been improperly welded in could result in serious bodily injury in a crash. We bought this vehicle for our family of 5 and have had 2 car seats in the 2nd row. Toyota advices NOT to use the 2nd row until a remedy is implemented, so the car is now unusable for us. The car has been at our local dealership since we received notice in December and we have had NO word on a solution. Toyota has known about this issue since October 2025. We're approaching 2 months without use of the vehicle we purchased and Toyota is approaching 4 months since the fault was discovered with no remedy to show for it.”

- NHTSA Complaint No. 11716274, February 6, 2026 (Incident Date October 7, 2025): “The second row seats where my children are seated are deemed unsafe and therefore unusable by Toyota. My vehicle has been out of service since October 17, 2025 due to a safety recall. The manufacturer has not provided a repair within a reasonable time. I have been placed in a rental vehicle that is not comparable, and the prolonged delay has caused ongoing financial harm. The manufacturer has acknowledged the unreasonable delay but has verbally denied compensation for losses related to the recall and has refused to document that denial in writing. I am concerned that this represents a failure to provide a timely and reasonable remedy for a known safety defect.”

- NHTSA Complaint No. 11715281, February 3, 2026 (Incident Date October 10, 2025): “This is a follow-up complaint regarding my new 2025 Toyota Sienna Hybrid. I am reporting a structural defect involving the vehicle floor and weld area. The issue is visible and affects the alignment and integrity of the floor structure. The vehicle was inspected by an authorized Toyota dealer. The dealer declined to repair the defect and stated that the condition is “within factory specifications,” without providing any engineering documentation or safety justification. Due to the location of the defect (floor / weld / body structure), I have serious concerns regarding occupant safety and crash performance, especially in the event of a collision. This is a brand-new vehicle, and no accident or misuse has occurred. Toyota Motor Sales has not provided a satisfactory response or resolution. I am requesting that NHTSA review this issue as a potential manufacturing and structural safety concern.”

- NHTSA Complaint No. 11715356, February 3, 2026 (Incident Date February 3, 2026): “The contact owns a 2025 Toyota Sienna. The contact received

notification of NHTSA Campaign Number: 25V668000 (Seats); however, the part to do the recall repair was not yet available. The local dealer was made aware of the issue and confirmed that parts were not yet available. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. In addition, the contact stated that the vehicle has been customized for wheelchair use. The contact was uncomfortable operating the vehicle with the open recall. The manufacturer was made aware of the issue and informed the contact that a vehicle could be rented with the possibility of being reimbursed once parts for the recall repair were available. The contact had not experienced a failure."

- NHTSA Complaint No. 11715007, February 2, 2026 (Incident Date February 2, 2026): "The contact owns a 2025 Toyota Sienna. The contact stated that while driving at an undisclosed speed, and while the vehicle was parked, there was a loud rattling sound coming from the rear of the vehicle. The rattling sound was coming from the second-row seat, and the seat was noticeably loose. The contact received notification of NHTSA Campaign Number: 25V668000 (Seats); however, the part to do the recall repair was not yet available. The vehicle was taken to the dealer; however, the vehicle was not diagnosed or repaired. The dealer confirmed that parts were not yet available. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. The manufacturer was made aware of the failure. The approximate failure mileage was 6,542."

- NHTSA Complaint No. 11714447, January 30, 2026 (Incident Date September 30, 2025): "The contact owns a 2025 Toyota Sienna. The contact received notification of NHTSA Campaign Number: 25V668000 (Seats); however, the part to do the recall repair was unavailable. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. The dealer was contacted, the vehicle was taken to the dealer, and the vehicle remained with the dealer. The contact had been provided with a rental by the dealer while waiting the repairs. The manufacturer was made aware of the issue, and a case was opened. The contact had not experienced a failure."

- NHTSA Complaint No. 11714554, January 30, 2026 (Incident Date October 7, 2025): "Recall is not being addressed in a timely manner"

- NHTSA Complaint No. 11714097, January 29, 2026 (Incident Date October 7, 2025): "We received notice of our 2025 Toyota Sienna second-row seat rails suspect welds in early December via mailed letter from Toyota. The recall

notice was posted on Toyota's website on October 7, 2025. We called our dealership on December 13, 2025 and received no information other than the remedy was not available. It is now the end of January and as far as we can find there is no remedy. Toyota explained that our second-row seats are mounted on seat rails that may have been improperly welded. They "recommend no one sit in or use a child restraint in the second-row seats while the vehicle is moving until the remedy is performed on the vehicle." This impacts our ability to use our car fully. We purchased this vehicle for its capacity and can't take full advantage of this perk."

- NHTSA Complaint No. 11714290, January 29, 2026 (Incident Date October 1, 2025): "The contact owns a 2025 Toyota Sienna. The contact received notification of NHTSA Campaign Number: 25V668000 (Seats); however, the part to do the recall repair was not yet available. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. The contact also stated that the trunk failed to open using the fob key remote control or the interior trunk button. The contact needed to pull on the trunk door to open the trunk. The vehicle was taken to the dealer, who informed the contact that an unknown part needed to be replaced, but the part was not available. The contact was also informed that the part to do the recall repair was not yet available. The vehicle was not repaired. The manufacturer was made aware of the failure. The failure mileage was approximately 20,000."

- NHTSA Complaint No. 11714357, January 29, 2026 (Incident Date October 7, 2025): "My 2025 Toyota Sienna Limited is subject to NHTSA Safety Recall25V668 (Toyota Recall No. 25TA12 (Interim Notice 25TB12)) regarding improperly welded second-row seat rails. The recall notice, which was mailed on 11/21/2025 and received by me the first week of December, 2025, states that these welds may fail in a high-speed collision, preventing the seats from restraining occupants and increasing the risk of serious injury. Toyota interim safety instructions advise that second-row seats should not be occupied until repaired. Prior to receiving this notice in the mail from Toyota I was unaware of the defect. There were no service lights or notifications in the car's electronic panel. I have since learned that the notice was issued on 10/7/2025. My vehicle has been grounded at Conicelli Toyota Service Department in Conshohocken, PA since 12/22/2025 - It has been inspected for this defect and to date the service department manager does not have the parts to repair it and cannot give me an expected date for the part to be available and repairs performed. I purchased this vehicle in full on 3/6/2025. Since the recall was issued on 10/7/2025, I have contacted my Toyota dealer several times to inquire on an

estimated date for repair of this safety issue. I have also filed a complaint /report with Toyota Brand Engagement Center. As of 1/29/2026, Toyota has failed to provide a definitive date for the repair or a timeline for the availability of replacement parts. I purchased this vehicle to safely transport my four grandchildren -ages, [XXX] , [XXX] , [XXX] and [XXX] to and from school/daycare every day. Because I cannot safely use the second-row seats, the vehicle is unusable for its primary purpose of transporting my family. The vehicle has been effectively "out of service" for safety reasons for more than 90 cumulative days. I am asking a manufacturer buyback as the safety defect has not been remedied within a reasonable timeframe. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)"

- NHTSA Complaint No. 11713937, January 28, 2026 (Incident Date October 7, 2025): "NHTSA Recall No. 25V668 with report date 10/7/25 provided notice that 2nd row seats were deemed unsafe to use by Toyota. We bought this vehicle specifically to be able to use the 2nd and 3rd row seats for our family. Over 3 months later, Toyota still has not provided any update on when remedy will be available for this safety recall. When will they have the remedy available?"

- NHTSA Complaint No. 11713595, January 27, 2026 (Incident Date October 7, 2025): "We were notified of a safety recall in mid December but they officially released the recall in early October. I have contacted Toyota multiple times with no update. Our dealer has not been able to provide a car with the same amount of seats as our Toyota Sienna. We have been limited to a 5 seat vehicle when we purchased a 7 row seat vehicle."

- NHTSA Complaint No. 11713002, January 23, 2026 (Incident Date July 1, 2025): "Open recall with no anticipated date of being fixed. The second row seats are unsafe for passengers which makes the vehicle unusable for a family."

- NHTSA Complaint No. 11712630, January 22, 2026 (Incident Date October 10, 2025): "I am filing a complaint regarding a safety recall on my 2025 Toyota Sienna. My vehicle is subject to an active safety recall that affects the second-row seating area. Due to this recall, the second row cannot be safely used. This makes the vehicle unsuitable for normal family use. I have a family of six, and the vehicle was purchased specifically for family transportation. Despite repeated attempts, the dealer has been unable to provide a timely repair appointment. I have been informed that the proposed recall repair may involve

cutting and welding the vehicle floor, which would constitute a major structural modification to a brand-new vehicle. I am extremely concerned that such a repair would negatively impact the safety, integrity, and value of the vehicle. At this time, the vehicle remains unrepaired, and I am effectively deprived of full and safe use of the car due to a safety-related defect. I am requesting that this issue be reviewed, as the recall remedy is delayed and the proposed repair raises serious safety and quality concerns. Thank you for your attention to this matter."

- NHTSA Complaint No. 11712435, January 21, 2026 (Incident Date January 21, 2026): "The contact owns a 2025 Toyota Sienna. The contact received notification of NHTSA Campaign Number: 25V668000 (Seats). The local dealer was contacted, but the vehicle was not diagnosed or repaired due to the remedy not being available. The contact was concerned about using the vehicle. The manufacturer was not contacted. The contact had not experienced a failure."

- NHTSA Complaint No. 11712227, January 20, 2026 (Incident Date October 6, 2025): "Toyota issued a recall on some 2025 Toyota Sienna's. Our app notified us in October and we immediately took it to the dealership for a rental, as we were advised not to use the second row seats. We have to use those because we have 3 kids in car seats. The interim notice was not even mailed out until December. We were told they would start rolling out the fix for this issue in late December or January. It is now January, and there is no update on the recall and nobody can get any information from Toyota. Our car has been sitting for over three months at the dealership, undrivable. They are not offering any compensation for people affected by this recall. Since it has been out of service for that long, it should should be a lemon law qualification. We did not purchase a brand new car for it to sit there unusable. There does not seem to be any urgency on Toyota's part for this to be fixed. We have no updates or information and this does not seem to be a priority for them. There are 55,000 vehicles affected. This is a large number of people, and somebody needs to put some real pressure on Toyota to fix the problem. This is unacceptable and somebody needs to look into this further. Please pass this along and do something about it because this is not fair to those of us who in good faith are making our payments every month on a car that we are not able to use. It's basically sitting there rotting while Toyota takes their sweet time to figure out how to fix it. I am extremely unhappy and am looking for some type of recourse. And I know I am not the only one as I am seeing posts about it on

online daily, from unhappy customers. This recall is due to a safety issue, if it's so unsafe, why aren't they fixing it?"

- NHTSA Complaint No. 11712228, January 20, 2026 (Incident Date October 10, 2025): "In October, 2025 I learned of a serious safety recall for improperly welded seat rails during manufacturing of a 2025 Toyota Sienna. I was not officially communicated of this safety recall by mail until December, 2025. I purchased this vehicle specifically to safely transport children and elderly parents, requiring full functionality of the captains seats and rear seats. While a repair/fix is being evaluated, Toyota provided the option to rent a vehicle and leave my new Toyota Sienna sitting on the dealer lot. However, no equivalent Toyota Siennas are available for long term rental at local dealerships, forcing us into highly inconvenient options for transport. Toyota was negligent in selling a new vehicle with improperly welded seat rails. There was a lapse in manufacturing quality control that is evident. Why were customers not notified until December of 2025, when these vehicles were sold nearly 6 months prior? After communications in December, 2025, there have been zero follow up correspondence from Toyota as of January 20, 2026."

- NHTSA Complaint No. 11711369, January 16, 2026 (Incident Date October 7, 2025): "They stated the second row is not safe in a high speed collision because they could eject. I've been using a rental for 3 months with no end insight. They stated they would have a timeline by 12/6 but that has yet to happen. My car is sitting at the dealership out in the elements for the unforeseeable future."

41. Toyota has deprived Class Members of the benefit of their bargain, exposed them all to a dangerous safety Defect, and caused them to expend money at its dealerships or other third-party repair facilities and/or take other remedial measures related to the Second Row Defect contained in the Class Vehicles.

42. Toyota has not repaired the Second Row Defect, has not offered to its customers a suitable and timely repair or replacement of parts related to the Second Row Defect free of charge, and has not reimbursed all Class Vehicle owners and leaseholders who incurred costs for repairs related to the Second Row Defect.

43. Class Members have not received the value for which they bargained when they purchased or leased the Class Vehicles.

44. As a result of the Second Row Defect, the value of the Class Vehicles has diminished, including without limitation, the resale value of the Class Vehicles. Reasonable consumers, like Plaintiffs, expect and assume that the Class Vehicles would be competently manufactured using proper welding techniques and that Toyota will not sell or lease vehicles with known safety defects, such as the Second Row Defect, and will fully disclose any such defect to consumers prior to purchase or offer a suitable non-defective repair. They do not expect that Toyota would fail to disclose the Second Row Defect to them and then fail to timely remedy the defect.

## FACTUAL ALLEGATIONS APPLICABLE TO INDIVIDUAL PLAINTIFFS

### I. Adam Hamblin

45. On June 7, 2025, Mr. Hamblin purchased a new 2025 Toyota Sienna Hybrid vehicle, Vehicle Identification Number 5TDJRKECXSS262035 (hereafter the "Hamblin Vehicle") from Sparks Toyota, an authorized Toyota dealership located in Myrtle Beach, South Carolina.

46. Mr. Hamblin purchased the Hamblin Vehicle specifically for its seating capacity and the ability to transport his family members and their belongings on regular interstate trips.

47. Neither Toyota nor the selling dealership disclosed to Mr. Hamblin at the time of purchase or before that the 2025 Toyota Sienna suffered from Second Row

Defect. If Toyota had adequately disclosed these facts before Mr. Hamblin purchased the vehicle, he would not have bought the vehicle.

48. In December 2025, Mr. Hamblin received a recall notice notifying him that his vehicle was unsafe, suffered from the Second Row Defect, and that Toyota recommended that no one occupy the second-row seating in his vehicle due to the unsafe Second Row Defect.

49. Shortly thereafter, Mr. Hamblin contacted Toyota directly concerning the Defect; in response Toyota told Mr. Hamblin to contact his local Toyota dealership instead.

50. Mr. Hamblin subsequently complained to Sparks Toyota about the Defect. The dealership initially told him the recall only concerned car seats and that he was unaffected by it, but the dealership later agreed that it was unsafe for anyone to occupy the Class Vehicles' unrepaired second row seats.

51. The dealership provided Mr. Hamblin with a replacement vehicle; however, the vehicle's cabin size was too small to accommodate Mr. Hamblin's family. After several weeks, Mr. Hamblin was provided with a larger replacement vehicle. However, the second replacement vehicle does not have the same suite of safety features available in the 2025 Sienna and is therefore inadequate as well. To date, neither Toyota nor its dealership has provided Mr. Hamblin with a suitable

alternative mode of transportation that is comparable to the Hamblin Vehicle, which remains unsafe to drive because of the Defect.

52. Further, the replacement vehicles provided to Mr. Hamblin were not hybrid vehicles like the Hamblin Vehicle and had worse fuel economy than the Hamblin Vehicle. Thus, Mr. Hamblin incurred additional fuel costs that he would not have otherwise incurred but for the Defect in the Hamblin Vehicle and Toyota's failure to repair within a reasonable period of time.

53. Mr. Hamblin was forced to leave his 2025 Sienna at the Sparks Toyota parking lot unattended for the last several months while the vehicle remains unrepaired.

54. On January 27, 2026, Mr. Hamblin, through his counsel, sent a letter to Toyota advising it that the Hamblin Vehicle suffered from the Second Row Defect and remained unrepaired.

**II. Juliet Kelsten**

55. On February 7, 2025, Plaintiff Juliet Kelsten purchased a 2025 Toyota Sienna XLE vehicle, Vehicle Identification Number 5TDJRKEC4SS05D099 (hereafter the "Kelsten Vehicle") from Toyota Direct, an authorized Toyota dealership located in Columbus, Ohio.

56. Ms. Kelsten purchased the vehicle specifically for its seating capacity and the ability to transport her family members including her young children.

57. Neither Toyota nor the selling dealership disclosed to Ms. Kelsten at the time of purchase or before that the 2025 Toyota Sienna suffered from Second Row Defect. If Toyota had adequately disclosed these facts before Ms. Kelsten purchased the vehicle, she would not have bought the vehicle.

58. In December 2025, Ms. Kelsten received a recall notice notifying her that her vehicle was unsafe, suffered from the Second Row Defect, and that Toyota recommended that no one occupy the second-row seating in her vehicle.

59. Shortly thereafter, Ms. Kelsten complained to Toyota Direct about the Defect. The dealership did not have a repair available and instead offered Plaintiff Kelsten a Nissan Pathfinder as a temporary alternative mode of transportation. However, the dealership required that to accept the proposed loaner vehicle Ms. Kelsten would be required to leave the Kelsten Vehicle at the dealership's parking lot unattended. The dealership further told Ms. Kelsten that the dealership would not be responsible for any damage to the Kelsten Vehicle, e.g., any weather-related damage or theft of the vehicle. Ms. Kelsten declined to accept the proposed loaner vehicle because she was not willing to leave her brand new Kelsten Vehicle at the dealership where she would be responsible for any damage to or theft of the vehicle.

60. Because Ms. Kelsten is unable to safely use the second row of seating in the Kelsten Vehicle, she drives the Kelsten Vehicle less frequently than she otherwise would have but for the Second Row Defect.

61. On March 4, 2026, Ms. Kelsten, through her counsel, sent a letter to Toyota advising it that the Kelsten Vehicle suffered from the Second Row Defect and remained unrepaired.

**III. Adelina Sessa**

62. On June 17, 2025, Ms. Sessa purchased a new 2025 Toyota Sienna Hybrid vehicle, Vehicle Identification Number 5TDYSKFC5SS197502 (hereafter the "Sessa Vehicle") from Smart Motors Toyota, an authorized Toyota dealership located in Madison, Wisconsin.

63. Ms. Sessa purchased the Sessa Vehicle specifically for its seating capacity.

64. Neither Toyota nor the selling dealership disclosed to Ms. Sessa at the time of purchase or before that the 2025 Toyota Sienna suffered from Second Row Defect. If Toyota had adequately disclosed these facts before Ms. Sessa purchased the vehicle, she would not have bought the vehicle.

65. In December 2025, Ms. Sessa received a recall notice notifying her that her vehicle was unsafe, suffered from the Second Row Defect, and that Toyota recommended that no one occupy the second-row seating in her vehicle due to the unsafe Second Row Defect.

66. Shortly thereafter, Ms. Sessa complained to a Toyota delaership about the Defect. In response, the dealership did not repair the Sessa Vehicle. Instead, the

dealership provided Ms. Sessa with a replacement vehicle however the replacement vehicle was inferior to and did not have the same features as the Sessa Vehicle. Approximately one month later, Ms. Sessa was provided with another Sienna as a replacement vehicle for several months thereafter, but that replacement was inferior and inadequate as well. For instance, Ms. Sessa was restricted from using the replacement vehicle to transport her dogs even though that was one of the primary purposes for which she purchased the Sessa Vehicle. In addition, Ms. Sessa was unable to use several of the features available on the Sessa Vehicle such as the remote startup and Toyota's "Drive Connect" service. Moreover, Ms. Sessa was required to spend time and fuel each month driving to a rental car facilities to renew the rental car agreement. Neither Toyota nor its dealership has provided Ms. Sessa with a suitable alternative mode of transportation that is comparable to the Sessa Vehicle. Thus for several months Plaintiff Sessa was unable to use her brand new vehicle and was not provided with suitable alternate transportation.

67. Ms. Sessa was forced to leave her 2025 Sienna at the Toyota dealership parking lot unattended for the last several months while the vehicle remained unrepaired.

68. Ms. Sessa, through her counsel, sent a letter to Toyota advising it that the Sessa Vehicle suffered from the Second Row Defect and was not repaired within a reasonable period of time.

**IV. Nancy Pierce**

69. On February 20, 2025, Ms. Pierce purchased a new 2025 Toyota Sienna Hybrid vehicle, Vehicle Identification Number 5TDZSKFC9SS182022 (hereafter the "Pierce Vehicle") from Palmiero Toyota, an authorized Toyota dealership located in Meadville, Pennsylvania.

70. Ms. Pierce purchased the Pierce Vehicle specifically for its seating capacity.

71. Neither Toyota nor the selling dealership disclosed to Ms. Pierce at the time of purchase or before that the 2025 Toyota Sienna suffered from Second Row Defect. If Toyota had adequately disclosed these facts before Ms. Pierce purchased the vehicle, she would not have bought the vehicle.

72. In December 2025, Ms. Pierce received a recall notice notifying her that her vehicle was unsafe, suffered from the Second Row Defect, and that Toyota recommended that no one occupy the second-row seating in her vehicle due to the unsafe Second Row Defect.

73. Shortly thereafter, Ms. Pierce complained to Palmiero Toyota about the Defect. The dealership did not attempt a repair on the vehicle. Instead, it provided Ms. Pierce with a replacement vehicle however the replacement vehicle was inferior to and did not have the same features as the Pierce Vehicle. Indeed, for two months thereafter Ms. Pierce was provided a Grand Highlander vehicle which was not a

Hybrid vehicle like the Pierce Vehicle and had worse fuel economy than the Pierce Vehicle. Thus, Ms. Pierce incurred additional fuel costs that she would not have otherwise incurred but for the Defect in the Pierce Vehicle and Toyota's failure to repair within a reasonable period of time. Thereafter, Ms. Pierce was provided with another Sienna as a replacement vehicle for approximately two additional months, but that replacement was inferior and inadequate as well; the vehicle was a lower trim level than the Pierce Vehicle and did not have many of the premium features which she paid for. Thus for several months Plaintiff Piece was unable to use her brand new vehicle and was not provided with suitable alternate transportation.

74. Ms. Pierce was forced to leave her 2025 Sienna at the Toyota dealership parking lot unattended for several months in the winter while the vehicle remained unrepaired; she was alerted that during this period the vehicle's battery died.

75. Ms. Pierce, through her counsel, sent a letter to Toyota advising it that the Pierce Vehicle suffered from the Second Row Defect and was not repaired within a reasonable period of time.

**V. Kaitlyn Hammack**

76. On July 21, 2025, Ms. Hammack purchased a new 2025 Toyota Sienna Hybrid vehicle, Vehicle Identification Number 5TDYSKFC1SS202579 (hereafter the "Hammack Vehicle") from Beaver Toyota of St. Augustine, an authorized Toyota dealership located in St. Augustine, Florida.

77. Ms. Hammack purchased the Hammack Vehicle specifically for its seating capacity.

78. Neither Toyota nor the selling dealership disclosed to Ms. Hammack at the time of purchase or before that the 2025 Toyota Sienna suffered from Second Row Defect. If Toyota had adequately disclosed these facts before Ms. Hammack purchased the vehicle, she would not have bought the vehicle.

79. In December 2025, Ms. Hammack received a recall notice notifying her that her vehicle was unsafe, suffered from the Second Row Defect, and that Toyota recommended that no one occupy the second-row seating in her vehicle due to the unsafe Second Row Defect.

80. Shortly thereafter, Ms. Hammack complained to Beaver Toyota about the Defect. The dealership did not repair the vehicle. Instead, it provided Ms. Hammack with a replacement vehicle for several months however the replacement vehicle was inferior to and did not have the same features as the Hammack Vehicle. Indeed, Ms. Hammack was provided with a replacement vehicle which was not a Hybrid vehicle like the Hammack Vehicle and had worse fuel economy than the Hammack Vehicle. Thus, Ms. Hammack incurred additional fuel costs that she would not have otherwise incurred but for the Defect in the Hammack Vehicle and Toyota's failure to repair within a reasonable period of time. The replacement vehicle also lacked many of Hammack Vehicle's features that she paid for. Thus for several months Plaintiff

Hammack was unable to use her brand new vehicle and was not provided with suitable alternate transportation.

81. Ms. Hammack was forced to leave her 2025 Sienna at the Toyota dealership parking lot unattended for several months while the vehicle remained unrepaired.

82. Ms. Hammack, through her counsel, sent a letter to Toyota advising it that the Hammack Vehicle suffered from the Second Row Defect and was not repaired within a reasonable period of time.

## CLASS ACTION ALLEGATIONS

### A. The Classes

83. Plaintiffs bring this action on their own behalf, and on behalf of the following classes:

**South Carolina Class:** All persons or entities who purchased or leased in South Carolina a 2025 Toyota Sienna vehicle that was produced between January 14, 2025 and July 24, 2025.

**Ohio Class:** All persons or entities who purchased or leased in Ohio a 2025 Toyota Sienna vehicle that was produced between January 14, 2025 and July 24, 2025.

**Wisconsin Class:** All persons or entities who purchased or leased in Wisconsin a 2025 Toyota Sienna vehicle that was produced between January 14, 2025 and July 24, 2025.

**Pennsylvania Class:** All persons or entities who purchased or leased in Pennsylvania a 2025 Toyota Sienna vehicle that was produced between January 14, 2025 and July 24, 2025.

**Florida Class:** All persons or entities who purchased or leased in Florida a 2025 Toyota Sienna vehicle that was produced between January 14, 2025 and July 24, 2025.

84. Toyota and its employees or agents are excluded from the Classes.

**B. Numerosity**

85. Upon information and belief, the Classes are each so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that thousands of Class Vehicles have been sold and leased in Ohio and South Carolina.

**C. Common Questions of Law and Fact**

86. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. These questions include:

a. whether the Class Vehicles suffer from the Second Row Defect;

b. whether the Second Row Defect constitutes an unreasonable safety hazard;

c. whether the Second Row Defect constitutes a material defect;

d. Whether the Second Row Defect rendered the Class Vehicles unmarketable;

e. Whether Defendants breached their express warranty by failing to timely

repair the Second Row Defect; and

f. Whether Defendants were unjustly enriched by selling the Class Vehicles with the Second Row Defect.

### D. Typicality

87. The Plaintiffs' claims are typical of the claims of the Classes since Plaintiffs purchased or leased defective Class Vehicles, as did each member of the Classes. Furthermore, Plaintiffs and all members of the Classes sustained economic injuries arising out of Defendants' wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

### E. Protecting the Interests of the Class Members

88. Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiffs nor their counsel has any interest which might cause them not to vigorously pursue this action.

### F. Proceeding Via Class Action is Superior and Advisable

89. A class action is the superior method for the fair and efficient adjudication of this controversy. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Classes individually to

redress effectively the wrongs done to them. Even if the members of the Classes could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Classes can be readily identified and notified based on, *inter alia*, Defendants' vehicle identification numbers, warranty claims, registration records, and database of complaints.

90. Defendants have acted, and refused to act, on grounds generally applicable to the Classes, thereby making appropriate final equitable relief with respect to the Classes as a whole.

## FIRST CAUSE OF ACTION

**Breach of Implied and Express Warranties Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.***
**(Plaintiffs on an individual basis only)**

91. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

92. Plaintiffs are each a "consumer" as defined in 15 U.S.C. § 2301(3).

93. Defendants are each a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

94. Plaintiffs' vehicles are each a "consumer product" as defined in 15 U.S.C. § 2301(6). 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with the written and implied warranties.

95. 15 U.S.C. § 2304(a)(1) requires Defendants, as warrantors, to remedy any defect, malfunction or nonconformance of the Plaintiffs' vehicles within a reasonable time and without charge to the Plaintiffs.

96. The Defendants' sale of the defective vehicles and their failure and/or refusal to repair the Plaintiffs vehicles' Second Row Defect within a reasonable period of time constitutes a breach of the written and implied warranties applicable to the Plaintiffs' vehicles.

97. As a result of Defendants' breaches of the written and implied warranties, and Defendants' failure to remedy the Second Row Defect within a reasonable time, Plaintiffs have suffered damages.

## SECOND CAUSE OF ACTION

**Breach of Express Warranty Pursuant to S.C. Code Ann. § 36-2-313**
**(Plaintiff Hamblin on behalf of the South Carolina Class)**

98. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

99. In connection with the sale or lease of the Class Vehicles to Plaintiffs and Class Members, Defendants provided Plaintiffs and Class Members with a New Vehicle Limited Warranty, under which they agreed to repair defective parts for the

36 month or 36,000 mile period following the date of the original retail delivery or date of first use.

100. Plaintiff Hamblin and the South Carolina Class Members relied on Defendants' warranties when they agreed to purchase or lease the Class Vehicles, and Defendants' warranties were part of the basis of the bargain.

101. Plaintiff Hamblin and the South Carolina Class Members submitted their vehicles for warranty repairs as referenced herein concerning the Second Row Defect. Defendants failed to comply with the terms of the express written warranty provided to each class member by failing to repair the Second Row Defect under the vehicle's warranty within a reasonable period of time as described herein.

102. Because Defendant was unable and incapable of repairing the Second Row Defect within a reasonable period of time and because Plaintiffs have been damaged by their inability to safely use their Class Vehicles when the vehicles remained unrepaired for significant periods of time, to the extent that Defendant contends that the exclusive remedy available under its New Vehicle Limited Warranty is the repair or replacement of a defective part, that remedy failed in its essential purpose.

103. As a result of these nonconformities, Plaintiff Hamblin and the South Carolina Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

104. Plaintiff Hamblin and the South Carolina Class Members could not reasonably have discovered these nonconformities with the Class Vehicles prior to Plaintiff Hamblin and the South Carolina Class Members' acceptance of the Class Vehicles.

105. As a result of Defendants' breach of express warranties, Plaintiff Hamblin and the South Carolina Class Vehicle owners have been damaged.

**THIRD CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability pursuant to S.C. Code Ann. § 36-2-314**
**(Plaintiff Hamblin on behalf of the South Carolina Class)**

106. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

107. Defendants are merchants with respect to motor vehicles.

108. The Class Vehicles were subject to implied warranties of merchantability running from the Defendants to Plaintiff Hamblin and the South Carolina Class Members.

109. An implied warranty that the Class Vehicles were merchantable arose by operation of law as part of the sale or lease of the Class Vehicles.

110. Defendants breached the implied warranty of merchantability in that the Class Vehicles suffer from the above-described Second Row Defect and thus were not in merchantable condition when Plaintiff Hamblin and the South Carolina Class

Members purchased or leased them, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles are used.

111. Defendants have breached the implied warranty of merchantability because the Class Vehicles when sold or leased would not pass without objection in the trade.

112. As a result of Defendants' breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.

113. Additionally, as a result of the Second Row Defect, Plaintiff Hamblin and the South Carolina Class Members were harmed and suffered actual damages.

**FOURTH CAUSE OF ACTION**
**Breach of Express Warranty under to Ohio Rev. Code Ann. § 1302.26**
**(On behalf of Plaintiff Kelsten and the Ohio Class)**

114. Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

115. In connection with the sale or lease of the Class Vehicles, Defendants provided Plaintiffs and Class Members with a New Vehicle Limited Warranty, under which they agreed to repair defective parts for the 36 month or 36,000 mile period following the date of the original retail delivery or date of first use.

116. Plaintiff Kelsten and Ohio Class Members relied on Defendants' warranty when they agreed to purchase or lease the Class Vehicles, and Defendants' warranty was part of the basis of the bargain.

117. Plaintiff Kelsten and Ohio Class Members submitted their Vehicles for warranty repairs as referenced herein. Defendants failed to comply with the terms of the express written warranty provided to each Class member, by failing to repair the Second Row Defect under the vehicle's warranty within a reasonable period of time as described herein.

118. Plaintiff Kelsten and Ohio Class Members have given Defendants reasonable opportunities to cure said defect, but Defendants have been unable and/or have refused to do so within a reasonable time.

119. Because Defendant was unable and incapable of repairing the Second Row Defect within a reasonable period of time and because Plaintiffs have been damaged by their inability to safely use their Class Vehicles when the vehicles remained unrepaired for significant periods of time, to the extent that Defendant contends that the exclusive remedy available under its New Vehicle Limited Warranty is the repair or replacement of a defective part, that remedy failed in its essential purpose.

120. As a result of said nonconformities, Plaintiff Kelsten and Ohio Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

121. Plaintiff Kelsten and Ohio Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiff Kelsten and Ohio Class Members' acceptance of the Class Vehicles.

122. Plaintiff Kelsten and Ohio Class Members would not have purchased or leased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that Class Vehicles contained Second Row Defect.

123. As a direct and proximate result of the willful failure of Defendants to comply with its obligations under the express warranty, Plaintiff Kelsten and Ohio Class Members have suffered actual and consequential damages. Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

## FIFTH CAUSE OF ACTION
**Tortious Breach of Implied Warranty of Merchantability**
**(Plaintiff Kelsten on behalf of the Ohio Class)**

124. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

125. Defendants are merchants with respect to motor vehicles.

126. The Class Vehicles were subject to implied warranties of merchantability running from the Defendants to Plaintiff Kelsten and the Ohio Class Members.

127. An implied warranty that the Class Vehicles were merchantable at the time of sale or lease arose by operation of law.

128. Defendants tortiously breached the implied warranty of merchantability in that the Class Vehicles suffer from the above-described Second Row Defect and thus were not in merchantable condition when Plaintiff Kelsten and the Ohio Class Members purchased or leased them, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles are used.

129. Defendants have tortiously breached the implied warranty of merchantability because the Class Vehicles when sold or leased would not pass without objection in the trade.

130. As a result of Defendants' tortious breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.

131. Additionally, as a result of the Second Row Defect, Plaintiff Kelsten and the Ohio Class Members were harmed and suffered actual damages.

## SIXTH CAUSE OF ACTION

**Breach of Express Warranty Pursuant to Wis. Stat. Ann. § 402.313**
**(Plaintiff Sessa on behalf of the Wisconsin Class)**

132. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

133. In connection with the sale or lease of the Class Vehicles to Plaintiffs and Class Members, Defendants provided Plaintiffs and Class Members with a New Vehicle Limited Warranty, under which they agreed to repair defective parts for the 36 month or 36,000 mile period following the date of the original retail delivery or date of first use.

134. Plaintiff Sessa and the Wisconsin Class Members relied on Defendants' warranties when they agreed to purchase or lease the Class Vehicles, and Defendants' warranties were part of the basis of the bargain.

135. Plaintiff Sessa and the Wisconsin Class Members submitted their vehicles for warranty repairs as referenced herein concerning the Second Row Defect. Defendants failed to comply with the terms of the express written warranty provided to each class member by failing to repair the Second Row Defect under the vehicle's warranty within a reasonable period of time as described herein.

136. Because Defendant was unable and incapable of repairing the Second Row Defect within a reasonable period of time and because Plaintiffs have been damaged by their inability to safely use their Class Vehicles when the vehicles

remained unrepaired for significant periods of time, to the extent that Defendant contends that the exclusive remedy available under its New Vehicle Limited Warranty is the repair or replacement of a defective part, that remedy failed in its essential purpose.

137. As a result of these nonconformities, Plaintiff Sessa and the Wisconsin Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

138. Plaintiff Sessa and the Wisconsin Class Members could not reasonably have discovered these nonconformities with the Class Vehicles prior to Plaintiff Sessa and the Wisconsin Class Members' acceptance of the Class Vehicles.

139. As a result of Defendants' breach of express warranties, Plaintiff Sessa and the Wisconsin Class Vehicle owners have been damaged.

**SEVENTH CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
**pursuant to Wis. Stat. Ann. § 402.314**
**(Plaintiff Sessa on behalf of the Wisconsin Class)**

140. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

141. Defendants are merchants with respect to motor vehicles.

142. The Class Vehicles were subject to implied warranties of merchantability running from the Defendants to Plaintiff Sessa and the Wisconsin Class Members.

143. An implied warranty that the Class Vehicles were merchantable arose by operation of law as part of the sale or lease of the Class Vehicles.

144. Defendants breached the implied warranty of merchantability in that the Class Vehicles suffer from the above-described Second Row Defect and thus were not in merchantable condition when Plaintiff Sessa and the Wisconsin Class Members purchased or leased them, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles are used.

145. Defendants have breached the implied warranty of merchantability because the Class Vehicles when sold or leased would not pass without objection in the trade.

146. As a result of Defendants' breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.

147. Additionally, as a result of the Second Row Defect, Plaintiff Sessa and the Wisconsin Class Members were harmed and suffered actual damages.

## EIGHTH CAUSE OF ACTION

**Breach of Express Warranty pursuant to 13 Pa. Stat. and Cons. Stat. Ann. § 2313 and 13 Pa. C.S. § 2A210**
**(Plaintiff Pierce on behalf of the Pennsylvania Class)**

148. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

149. In connection with the sale or lease of the Class Vehicles to Plaintiffs and Class Members, Defendants provided Plaintiffs and Class Members with a New Vehicle Limited Warranty, under which they agreed to repair defective parts for the 36 month or 36,000 mile period following the date of the original retail delivery or date of first use. Th new Vehicle Limited Warranty constitutes an express warranty within the meaning of 13 Pa. Stat. and Cons. Stat. Ann. § 2313 and 13 Pa. C.S. § 2A210.

150. Plaintiff Pierce and the Pennsylvania Class Members relied on Defendants' warranties when they agreed to purchase or lease the Class Vehicles, and Defendants' warranties were part of the basis of the bargain.

151. Plaintiff Pierce and the Pennsylvania Class Members submitted their vehicles for warranty repairs as referenced herein concerning the Second Row Defect. Defendants failed to comply with the terms of the express written warranty provided to each class member by failing to repair the Second Row Defect under the vehicle's warranty within a reasonable period of time as described herein.

152. Because Defendant was unable and incapable of repairing the Second Row Defect within a reasonable period of time and because Plaintiffs have been damaged by their inability to safely use their Class Vehicles when the vehicles remained unrepaired for significant periods of time, to the extent that Defendant contends that the exclusive remedy available under its New Vehicle Limited Warranty

is the repair or replacement of a defective part, that remedy failed in its essential purpose.

153. As a result of these nonconformities, Plaintiff Pierce and the Pennsylvania Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

154. Plaintiff Pierce and the Pennsylvania Class Members could not reasonably have discovered these nonconformities with the Class Vehicles prior to Plaintiff Pierce and the Pennsylvania Class Members' acceptance of the Class Vehicles.

155. As a result of Defendants' breach of express warranties, Plaintiff Pierce and the Pennsylvania Class Vehicle owners have been damaged.

## NINTH CAUSE OF ACTION

**Breach of Implied Warranty of Merchantability**
**pursuant to 13 Pa. Stat. and Cons. Stat. Ann. § 2314 and 13 Pa. C.S. § 2A212**
**(Plaintiff Pierce on behalf of the Pennsylvania Class)**

156. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

157. Defendants are merchants with respect to motor vehicles.

158. The Class Vehicles were subject to implied warranties of merchantability running from the Defendants to Plaintiff Pierce and the Pennsylvania Class Members.

159. An implied warranty that the Class Vehicles were merchantable arose by operation of law as part of the sale or lease of the Class Vehicles.

160. Defendants breached the implied warranty of merchantability in that the Class Vehicles suffer from the above-described Second Row Defect and thus were not in merchantable condition when Plaintiff Pierce and the Pennsylvania Class Members purchased or leased them, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles are used.

161. Defendants have breached the implied warranty of merchantability because the Class Vehicles when sold or leased would not pass without objection in the trade.

162. As a result of Defendants' breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.

163. Additionally, as a result of the Second Row Defect, Plaintiff Pierce and the Pennsylvania Class Members were harmed and suffered actual damages.

## TENTH CAUSE OF ACTION

**Breach of Express Warranty Pursuant to Fla. Stat. Ann. § 672.313**
**(Plaintiff Hammack on behalf of the Florida Class)**

164. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

165. In connection with the sale or lease of the Class Vehicles to Plaintiffs and Class Members, Defendants provided Plaintiffs and Class Members with a New Vehicle Limited Warranty, under which they agreed to repair defective parts for the

36 month or 36,000 mile period following the date of the original retail delivery or date of first use.

166. Plaintiff Hammack and the Florida Class Members relied on Defendants' warranties when they agreed to purchase or lease the Class Vehicles, and Defendants' warranties were part of the basis of the bargain.

167. Plaintiff Hammack and the Florida Class Members submitted their vehicles for warranty repairs as referenced herein concerning the Second Row Defect. Defendants failed to comply with the terms of the express written warranty provided to each class member by failing to repair the Second Row Defect under the vehicle's warranty within a reasonable period of time as described herein.

168. Because Defendant was unable and incapable of repairing the Second Row Defect within a reasonable period of time and because Plaintiffs have been damaged by their inability to safely use their Class Vehicles when the vehicles remained unrepaired for significant periods of time, to the extent that Defendant contends that the exclusive remedy available under its New Vehicle Limited Warranty is the repair or replacement of a defective part, that remedy failed in its essential purpose.

169. As a result of these nonconformities, Plaintiff Hammack and the Florida Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

170. Plaintiff Hammack and the Florida Class Members could not reasonably have discovered these nonconformities with the Class Vehicles prior to Plaintiff Hammack and the Florida Class Members' acceptance of the Class Vehicles.

171. As a result of Defendants' breach of express warranties, Plaintiff Hammack and the Florida Class Vehicle owners have been damaged.

**ELEVENTH CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
**pursuant to Fla. Stat. Ann. § 672.314 (West)**
**(Plaintiff Hammack on behalf of the Florida Class)**

172. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

173. Defendants are merchants with respect to motor vehicles.

174. The Class Vehicles were subject to implied warranties of merchantability running from the Defendants to Plaintiff Hammack and the Florida Class Members.

175. An implied warranty that the Class Vehicles were merchantable arose by operation of law as part of the sale or lease of the Class Vehicles.

176. Defendants breached the implied warranty of merchantability in that the Class Vehicles suffer from the above-described Second Row Defect and thus were not in merchantable condition when Plaintiff Hammack and the Florida Class Members purchased or leased them, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles are used.

177. Defendants have breached the implied warranty of merchantability because the Class Vehicles when sold or leased would not pass without objection in the trade.

178. As a result of Defendants' breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.

179. Additionally, as a result of the Second Row Defect, Plaintiff Hammack and the Florida Class Members were harmed and suffered actual damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendants as follows:

a. An order certifying the proposed Classes, designating Plaintiffs as named representatives of the Classes, and designating the undersigned as Class Counsel;

b. An order awarding Plaintiffs and class members their actual damages, incidental and consequential damages, punitive damages, and/or other form of monetary relief provided by law;

c. An order awarding Plaintiffs and the classes restitution, disgorgement, or other equitable relief as the Court deems proper;

d. Equitable relief including, but not limited to, replacement of the Class Vehicles with new vehicles, or repair of the defective Class Vehicles with an extension of the express warranties and service contracts which are or were applicable to the Class Vehicles;

e. Reasonable attorneys' fees and costs;

f. Pre-judgment and post-judgment interest, as provided by law;

g. Plaintiffs demand that Defendants perform a recall, and repair all Class Vehicles; and

h. Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

DATED: October 26, 2026

By: */s/ Trinette G. Kent*
Trinette G. Kent, Esq.
Lemberg Law, LLC
*Attorneys for Plaintiffs*